IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**ROBERT WILLIAM LOSE, JR.,**

        Plaintiff,

v.                                                          **Civil Action No.: 5:22-cv-45**
                                                                Judge Bailey

**WEST VIRGINIA DIVISION OF
CORRECTIONS & REHABILITATION**
Corrections Officer Staffing Warden, and
**NCRJ CORRECTION STAFFING,**
Division of Corrections and Rehabilitation
Officer's Warden,

        Defendants.

## REPORT AND RECOMMENDATION

### I. Background

On March 11, 2022, the Plaintiff filed a *pro se* complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. On that same date, the Plaintiff filed a motion to proceed *in forma pauperis* and consented to the collection of fees from his inmate trust fund account. Subsequently, also on March 11, 2022, the Plaintiff was ordered to correct deficiencies related to his failure to provide a correctly submitted, certified copy of his inmate trust fund account statement ("PTAR") pursuant to 28 U.S.C.§ 1914(a)(2). On March 24, 2022, the Plaintiff submitted a copy of his PTAR. On June 2, 2022, the Plaintiff's motion to proceed *in forma pauperis* was approved. This case is before the undersigned

for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915A.

## II. The Complaint

In his complaint, the Plaintiff asserts numerous grievances, all of which he alleges occurred while he was being held at the West Virginia Northern Central Regional Jail ("NCRJ").

In a handwritten section titled "Grievances," the Plaintiff lays out several allegations which he claims were violative of his rights. First, the Plaintiff alleges that on or around January of 2022, he was exposed to COVID-19 by an inmate after said inmate was placed into his Section despite having tested positive for the virus after a 14-day quarantine period. The Plaintiff further alleges that effective procedures to prevent the spread of COVID-19 were not in place, and that he and other inmates have been exposed to and tested positive for COVID-19. The Plaintiff alleges that his rights have been violated because of these events, as well an additional 10-day quarantine period subsequent to a positive COVID-19 test.

Second in the handwritten section, Plaintiff alleges that two inmates were not removed from his Section until after testing positive for COVID-19. The Plaintiff further alleges that those same inmates were not immediately tested for the virus despite an alleged exposure from one "Mr. Jon Skidmore," who the Plaintiff alleges exposed his Section to COVID-19, leading to his contracting the virus.

Third and finally in the handwritten section, Plaintiff alleges that several officials at the NCRJ facility tested positive for, and exposed him to, COVID-19. In his complaint, Plaintiff alleges that proper procedures were not enforced to prevent the spread of COVID-19 until after his Section began testing positive for the virus.

Next, in Section V of his § 1983 complaint, the Plaintiff proceeds to make further allegations. Under "Claim 1," the Plaintiff alleges hazardous housing due to being placed in a one-man cell with four people despite CDC COVID-19 regulations to the contrary. Next, under "Claim 2" and "Claim 3," the Plaintiff alleges that due to the presence of mold in "cell 10" of Section "B5" that other inmates were shuffled around the facility, furthering the spread of COVID-19. Additionally, the Plaintiff alleges that clean sheets and blankets have not been provided for himself and other inmates. Under "Claim 4," the Plaintiff asserts that corrections officers, on February 1, 2022, entered Section B5 and demanded that all inmates in that Section take COVID-19 tests and receive the COVID-19 vaccination. Additionally, the Plaintiff asserts that the corrections officers stated that write-ups would be issued for any who refused. Finally, "Claim 5" seems to recapitulate the allegation of Claims 1 through 3. The Plaintiff asserts that he has been injured in the forms of mental, physical, and emotional suffering due to these allegations.

Also attached to the Plaintiff's complaint are three West Virginia Division of Corrections ("WVDCR") Inmate Grievance Forms. Notably, it appears as though the Plaintiff has not formally submitted said Grievance Forms in accordance with the proper procedures, but rather has only completed the Forms to send attached to his § 1983 petition. On the first Grievance Form, the plaintiff again alleges that an inmate, who had

tested positive for COVID-19, was placed into Section B5 of the NCRJ. On his second Grievance Form, the Plaintiff alleges that he has suffered mental injury due to instances of violence which occurred, the Plaintiff alleges, on February 2, 2022, and February 9, 2022. Regarding the third and final Grievance Form, the Plaintiff seems to recapitulate the allegations made previously in his attached, handwritten "Grievances" section.

For relief, the Plaintiff seeks to be released from his detention at the NCRJ, to be granted to serve 7-years of probation, as well as entry into a sober living home, referred to as a "halfway house." Additionally, the Plaintiff seeks $32,560 in compensatory damages.

### III. Standard of Review

Because the Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), a court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are

"indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## IV. Analysis

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a case with respect to prison conditions must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court of the United States has determined that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 532 (2002).

In addition, although generally the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, the court is not foreclosed from dismissing a case *sua sponte* on exhaustion grounds. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005). If the failure to exhaust is apparent from the face of the complaint, the court has the authority under 28 U.S.C. §1915A to dismiss the case *sua sponte*. Id. at 682.

The West Virginia Regional Jail Authority makes available to its inmates a grievance procedure through which they may seek review of complaints related to the

---

[2]   Id. at 327.

conditions of their confinement. Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's

appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

Despite the Plaintiff's claims in his § 1983 Petition to the contrary, a prisoner grievance procedure is available at the NCRJ. This is evidenced by the three West Virginia Division of Corrections ("WVDCR") Inmate Grievance Forms that the Plaintiff attached to his complaint. [Doc. 1, pgs. 14-16]. Despite this system being in place however, the Plaintiff indicated that he did not file a grievance concerning the facts relating to his complaint in the available prisoner grievance procedure. [Id. at 4]. When explaining why he did not file a grievance, the Plaintiff stated that he wishes for the Federal government to intervene, rather than first undergo the proper prisoner grievance procedure. [Id.]. Consequently, it is apparent that the Plaintiff failed to exhaust each step of the procedure before filing in Federal court. [Id.]. Because the failure to exhaust is clear on the face of the complaint, *sua sponte* dismissal of this action is appropriate.[3] See Anderson, 407 F.3d at 682.

---

[3] Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . .," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a

## V. Recommendation

For the reasons set forth above, the undersigned recommends that the Plaintiff's Complaint [**Doc. 1**] be **DISMISSED WITHOUT PREJUDICE** for the failure to exhaust, and this case be closed.

The petitioner shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985);

---

defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms). Here, plaintiff has failed to set forth any reason to excuse his failure to exhaust.

8

Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The clerk is **DIRECTED** to send a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to her last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

DATED: June 6, 2022

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE